1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Lee, *et al.*,<br><br>                **Plaintiffs,**<br><br>        **vs.**<br><br>City of Kingman, *et al.*,<br><br>             **Defendants.** | 3:14-cv-08218 JWS<br><br>**ORDER AND OPINION**<br><br>**[Re: Motion at Docket 34]** |

## I.  MOTION PRESENTED

At docket 34 defendant City of Kingman ("Kingman") moves to dismiss the First Amended Complaint ("FAC") of plaintiffs Ronald Lee and Raola Lee ("the Lees"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Lees oppose at docket 37. Kingman replies at docket 41.  Kingman filed a notice of supplemental authority at docket 42, to which the Lees respond at docket 43.[1]  Oral argument was not requested and would not assist the court.

---

[1]The Lees styled their response as a "surreply."  A surreply is a "movant's second supplemental response to another party's opposition to a motion."  Black's Law Dictionary (10th ed. 2014).  Because the Lees are not a movant, their filing at docket 43 is not a surreply.  Their filing is better styled as a surresponse.  *See id.* (defining a "surresponse" as "[a] second response by someone who opposes a motion.").  Regardless, surreplies and surresponses are not authorized by Rule 7, any other Federal Rule of Civil Procedure, or this District's Local Rules, absent prior leave of court.  *See Millenium 3 Technologies v. ARINC, Inc.*, No. CV08-1257-PHX-JAT, 2008 WL 4737887, at *2 (D. Ariz. Oct. 29, 2008) (regarding surreplies); *Padilla v. Bechtel Const. Co.*, No. CV 06 286 PHX LOA, 2007 WL 625927, at *1 (D. Ariz. Feb. 27, 2007) (regarding surresponses).  The Lees' filing was improper because it was filed without leave of court.  But in order to advance the purpose of securing a just, speedy, and inexpensive determination of this action, *see* Rule 1, and because Kingman does not object to the Lees' filing, the Court will treat the Lees' filing as a motion to file a surresponse, grant that motion, and consider their filing at docket 43.

## II.  BACKGROUND

This case arises out of a tragic accident at a Fourth of July fireworks show co-hosted by defendants Kingman and the Mohave County Fair Association ("MCFA") in 2013.  The Lees' son, Jeremy Woodrow Lee ("Jeremy"), was working the show as a pyrotechnic assistant employed by defendant Lantis Fireworks ("Lantis").  He suffered catastrophic injuries when at least one of the fireworks exploded out of the side of its launch tube housing, striking him in the face.

The Lees filed this action, invoking the court's diversity jurisdiction, after they were appointed as Jeremy's conservators and guardians.  The Lees' original complaint names only Kingman as a defendant.[2]  The FAC adds as defendants Kingman Boomers Non-Profit, Inc., ("Kingman Boomers"); the MCFA; and Huisky Trading Company, Ltd. ("Huisky").[3]  After Kingman filed the motion to dismiss currently before the court, the Lees filed their Second Amended Complaint ("SAC"),[4] which removes Kingman Boomers as a defendant and names numerous additional parties that allegedly manufactured, distributed, shipped, and stored the defective firework cake. Although Kingman's present motion to dismiss is directed toward the FAC, the court will consider it as directed toward the SAC because the SAC's changes are irrelevant to Kingman's motion.

## III.  STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[5]  To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must

[2]Doc. 1 at 1.

[3]Doc. 10 at 1.

[4]Doc. 58.

[5]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

1   contain sufficient allegations of underlying facts to give fair notice and to enable the
2   opposing party to defend itself effectively."[6]   Dismissal for failure to state a claim can be
3   based on either "the lack of a cognizable legal theory or the absence of sufficient facts
4   alleged under a cognizable legal theory."[7]   "Conclusory allegations of law . . . are
5   insufficient to defeat a motion to dismiss."[8]

6         To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief
7   that is plausible on its face.'"[9]   "A claim has facial plausibility when the plaintiff pleads
8   factual content that allows the court to draw the reasonable inference that the
9   defendant is liable for the misconduct alleged."[10]   "The plausibility standard is not akin
10  to a 'probability requirement,' but it asks for more than a sheer possibility that a
11  defendant has acted unlawfully."[11]   "Where a complaint pleads facts that are 'merely
12  consistent with' a defendant's liability, it 'stops short of the line between possibility and
13  plausibility of entitlement to relief.'"[12]   "In sum, for a complaint to survive a motion to
14  dismiss, the non-conclusory 'factual content,' and reasonable inferences from that
15  content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[13]

16
17
18

[6]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[7]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[8]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[9]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10]*Id.*

[11]*Id.* (citing *Twombly*, 550 U.S. at 556).

[12]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[13]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

-3-

1

## IV. DISCUSSION

2   The SAC alleges four causes of action against Kingman: (1) strict liability;

3   (2) negligence; (3) vicarious liability; and (4) loss of consortium.  Kingman argues that

4   each fails to state a claim.

5   **A.   Strict and Vicarious Liability**

6   The Lees' first cause of action alleges that Kingman and the MCFA are strictly

7   liable for Jeremy's injuries because the pyrotechnics fireworks show they hosted was an

8   "abnormally dangerous activity."[14]  Their third cause of action alleges that Kingman and

9   the MCFA are vicariously liable for Lantis' negligence.[15]  Relying on *Welker v.*

10  *Kennecott Copper Co.*[16] and its progeny, Kingman argues that both of these causes of

11  action fail to state a claim because "Arizona law bars an injured employee of an

12  independent contractor from holding a landowner strictly or vicariously liable for injuries

13  suffered while performing his work for the landowner."[17]

14  At common law, an employer was exempt "from liability for his independent

15  contractor's negligence" under what became known as the "independent contractor

16  rule."[18]  This rule is expressed in Section 409 of the Restatement (First) of Torts as

17  follows: "the employer of an independent contractor is not subject to liability for bodily

18  harm caused to another by a tortious act or omission of the contractor or his servants."[19]

19

20

21

22

23   [14]Doc. 58 at 7 ¶ 29.

24   [15]*Id.* at 8 ¶¶ 37-42.

25   [16]403 P.2d 330 (Ariz. 1965).

26   [17]Doc. 34 at 4.

27   [18]*Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962, 966 (Ariz. 1990).

28   [19]Restatement (First) of Torts § 409 (1934).

-4-

The idea behind this rule is that "it would be unjust to hold an employer liable for the negligence of an independent contractor over whom he had no control."[20]

Beginning in around 1850, courts began recognizing numerous exceptions to the independent contractor rule based on a landowner's nondelegable duty to invitees. The general idea behind these exceptions is that it would be unjust to allow an employer to escape liability for an activity she caused to be performed simply because she delegated the work to a contractor.[21] At present, the "general rule for independent contractor cases is still that the employer is not liable unless he has been independently negligent, as by improper selection of the contractor or in some other manner," but this rule does not apply, and an employer may be held strictly or vicariously liable, if one of the many exceptions to the rule is satisfied.[22]

Sections 416 to 429 of the Restatement (First) of Torts contain exceptions to the independent contractor rule.[23] Kingman argues that none of these exceptions apply because *Welker* makes clear that the duties set out in those exceptions are owed to third parties, not employees of the independent contractor.

*Welker* involved negligence claims brought on behalf of a worker who was killed while working on the defendant's property. The plaintiff argued that the defendant landowner was liable for the decedent's injuries under various sections of the

---

[20]*Kelly*, 800 P.2d at 966.

[21]*Id.*

[22]*Id.* at 967. The *Kelly* court noted that "[t]he recognized exceptions have become so numerous that some commentators have questioned the validity of the rule itself." *Id.*

[23]Restatement (First) of Torts ch. 15, topic 1, intro. note (stating that an employer may be subject to vicarious liability "in those exceptional situations, dealt with in §§ 416 to 425 inclusive, in which the employer owes a non-delegable duty to others to make the completed work reasonably safe," as well as in the situations stated in §§ 426 to 429, in which "the employer is made liable for the negligent manner in which the contractor and his servants do the detail of certain kinds of work entrusted to them, to the same extent as though the contractor and his servants were the servants of the employer himself.").

1   Restatement,[24] two of which are relevant to the present action.  The first is Section 427,

2   which states that a landowner "who employs an independent contractor to do work

3   which is inherently dangerous to others is subject to liability for bodily harm caused to

4   them by the contractor's failure to exercise reasonable care to prevent harm resulting

5   from the dangerous character of the work."[25]  The second is Section 414, which states

6   that the landowner is personally (not vicariously) liable for failing to exercise reasonable

7   care regarding the work over which he retained control.[26]

8           The *Welker* court held that the duties set out in the sections cited by the plaintiff,

9   except for those set out in Section 414, are not owed to an independent contractor's

10  employees for two reasons: (1) "the workman's recovery is now . . . regulated by

11  workmen's compensation acts,"[27] and (2) a bright line rule was needed to reduce

12  litigation over whether a particular job was "inherently dangerous."[28]  With regard to

13  Section 414, however, the court held that a landowner personally owes Section 414

14  duties to an independent contractor's employees because "[t]he division of control,

15  particularly in the area of safety precautions, may have some tendency to cause

16  accidents."[29]

17          The Lees counter that *Welker* does not foreclose their claims because it does

18  not address, and therefore does not extinguish, liability under two sections of the

19  Restatement (Second) of Torts: Section 423 and Section 519.  Because these two

20

21

22      [24]*Welker*, 404 P.2d at 335-36 (citing Restatement (First) of Torts §§ 413, 414, 416, 422,
23  and 427).

24      [25]Restatement (First) of Torts § 427.

25      [26]*Id.* § 414.

26      [27]*Welker*, 404 P.2d at 338.

27      [28]*Id.* at 339.

28      [29]*Id.* at 340.

1    sections are substantively identical to the sections addressed in *Welker*, the Lees'

2    argument lacks merit.

3                    **1.      Vicarious liability under Section 423**

4            Section 423 is included in chapter 15, topic two of the Restatement (Second) of

5    Torts, and contains exceptions to the independent contractor rule in situations where a

6    landowner may be held vicariously liable based on his "non-delegable duty to others to

7    make the completed work reasonably safe."[30]  Section 423, entitled "Making or Repair

8    of Instrumentalities Used in Highly Dangerous Activities," provides as follows:

9                One who carries on an activity which threatens a grave risk of serious
             bodily harm or death unless the instrumentalities used are carefully
10           constructed and maintained, and who employs an independent contractor
             to construct or maintain such instrumentalities, is subject to the same
11           liability for physical harm caused by the negligence of the contractor in
             constructing or maintaining such instrumentalities as though the employer
12           had himself done the work of construction or maintenance.[31]

13   The Lees argue that they state a valid claim under Section 423 because "*Welker* did not

14   include [Section] 423 in the sections inapplicable to employees of independent

15   contractors."[32]

16           The Lees are misreading *Welker*.  *Welker* stands for the proposition that none of

17   the non-delegable duties found in Sections 416 to 425 of the Restatement (First) of

18   Torts are owed to an independent contractor's employees.[33]  Although the Lees are

19   correct that Section 423 was not at issue in *Welker*, the court's ruling necessarily and

20

21

22

23   [30]Restatement (Second) of Torts ch. 15, topic 1, intro. note (1965).  *See also Lee v. M &
     H Enterprises, Inc.*, 347 P.3d 1153, 1157 n.4 (Ariz. Ct. App. 2015).

24   [31]Restatement (Second) of Torts § 423.

25   [32]Doc. 37 at 4.

26
     [33]*Welker*, 403 P.2d at 336-37 (quoting Restatement (First) of Torts ch. 15, topic 1, intro.
27   note).  *See also id.* at 337 (stating the omission of references to contractor employees in the
     comments to Section 423, among others, is an "[a]dditional clue[] that it was not intended that
28   [the duties set forth in Section 423] apply to workmen on the job.").

                                                    -7-

expressly encompass that section.[34]  The Lees argue that the Arizona Supreme Court held otherwise in *Rager v. Superior Coach Sales & Serv.*,[35] but that case is inapposite because there the injured party was a third-party motorist, not an injured employee of an independent contractor.  The Lees' vicarious liability claim against Kingman will be dismissed.

## 2.    Strict liability under Section 519

Sections 519 and 520 are part of chapter 21 of the Restatement, which covers strict liability for abnormally dangerous activities.  Section 519 of the Restatement (Second) of Torts sets out the general principle of strict liability for abnormally dangerous activities as follows:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.[36]

Section 520 of the Restatement (Second) of Torts lists the following six factors that are to considered when determining whether a given activity is "abnormally dangerous":

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

---

[34]*Id.* at 337.

[35]526 P.2d 1056, 1061 (Ariz. 1974).

[36]Restatement (Second) of Torts § 519 (1977).

1    Although *Welker* does not explicitly mention Section 519, Kingman argues that

2    imposing strict liability would contravene *Welker*'s rule against landowner liability for

3    injuries sustained by an independent contractor's employees.[37]  The court agrees.

4        *Welker* held that the strict liability exception to the independent contractor rule

5    set out in Section 427 (renumbered as Section 427A in the Restatement (Second) of

6    Torts) does not apply where the injured party is the independent contractor's

7    employee.[38]  This holding extinguishes the Lees' Section 519 claim—Section 519's

8    general strict liability standards are incorporated into Section 427 and were addressed

9    in *Welker*.[39]  Because *Welker* holds that the strict liability doctrine described in Section

10    427 (and by necessary implication, Section 519) does not apply where the injured party

11    was the contractor's employee,[40] the Lees' strict liability cause of action fails to state a

12    claim.

13   **B.   Negligence**

14        The Lees' negligence claim alleges premises liability—that Kingman breached its

15    duty "to inspect and make the premises safe" for workers like Jeremy.[41]  Kingman

16    argues that this claim fails because the Lees do not allege that Kingman turned over to

17

18

---

19      [37]Doc. 41 at 6-7.

20

21      [38]*Welker*, 403 P.2d at 339.

22      [39]The comments to Section 427A state that an employer's liability under Section 427A is
determined by reference to the strict liability standards found in Section 519, among other
sections.  Restatement (Second) of Torts § 427A comment a.  *See also Apostal v. Oliveri
Const. Co.*, 678 N.E.2d 756, 760 (Ill. App. Ct. 1997) ("The Restatement of Torts explains that
strict liability may be imposed as a matter of law on persons, including property owners and
employers, who undertake an activity which is, by definition, either ultrahazardous or
abnormally dangerous.") (citing Restatement (First) of Torts §§ 519, 520; Restatement
(Second) of Torts §§ 427A, 519, 520)).

26      [40]*See also Lee*, 347 P.3d at 1156 (citing *Welker* for the proposition that "Arizona courts
have consistently recognized that a landowner is not liable for the negligent conduct of an
independent contractor unless the landowner has been independently negligent.").

28      [41]Doc. 58 at 7 ¶¶ 33-34.

1  Lantis unsafe premises.  The Lees' response does not dispute that the SAC fails to
2  allege unsafe premises.  This alone justifies dismissal of their claim.

3       Instead of defending their premises liability cause of action, the Lees respond to
4  Kingman's argument by offering an alternative theory of liability.  They argue that
5  Kingman is liable under Section 414 of the Restatement because it retained control
6  over the Fireworks show under its contract with Lantis.[42]  The rule of nonliability
7  adopted by the *Welker* court would not preclude such a claim; that rule "is limited to the
8  situation where the contractee has turned over safe premises to the independent
9  contractor without hidden and/or concealed defects" and has not retained control of the
10  premises as set out in Section 414 of the Restatement.[43]

11       Section 414 states that landowners are subject to personal liability for their
12  negligence in exercising their retained supervisory control over their independent
13  contractors.[44]  A landowner who "retains the control of any part of the work" entrusted to
14  an independent contractor "is subject to liability for physical harm to others for whose
15  safety the employer owes a duty to exercise reasonable care, which is caused by his
16  failure to exercise his control with reasonable care."[45]  Whether a landowner has
17  "retain[ed] the control of any part of the work" is a question of fact that should ordinarily
18  be left to the jury.[46]

19       The flaw with the Lees' argument is that the SAC does not plead a Section 414
20  claim: it neither invokes Section 414 nor alleges that Kingman retained any supervisory
21  control over Lantis' work.  Instead of pointing to their complaint, the Lees point to

22

23  [42]Doc. 37 at 12-14.

24  [43]*Welker*, 403 P.2d at 339.

25  [44]Restatement (Second) of Torts § 414 comment a.

26  [45]*Id.* § 414.

27

28  [46]*Lewis v. N.J. Riebe Enterprises, Inc.*, 825 P.2d 5, 10 (Ariz. 1992) (quoting
Restatement (Second) of Torts § 414).

1   Kingman's contract with Lantis as proof that Kingman retained sufficient control to

2   subject it to Section 414 liability.[47]  The court declines to consider this contract because

3   it is an exhibit to Kingman's motion and not a part of the SAC.  The Lees may not use

4   their opposition to Kingman's motion to substitute the flawed premises liability claim

5   they pled for a new Section 414 claim they did not.

6   **C.   Loss of Consortium**

7        Kingman argues that the Lees' loss of consortium claim is untimely.  A.R.S. § 12-

8   821.01 requires all parties with claims against a public entity to file claims with the

9   public entity within 180 days of accrual;[48] A.R.S. § 12-821 requires such parties to file

10  suit within one year of accrual.[49]  The Lees filed their claim with Kingman on May 5,

11  2014, and filed this action on November 5, 2014.  Thus, if the Lees' loss of consortium

12  claim accrued on the date of the accident (July 4, 2013), as Kingman argues, then their

13  claim is untimely under both statutes of limitations cited by Kingman.[50]

14       The Lees argue these statutes of limitations should be equitably tolled because

15  they did not retain counsel until about thirteen days after their notice of claim was due

16  and because Kingman has not been prejudiced by their untimely filing.[51]  "Equitable

17  tolling applies when the plaintiff is excusably ignorant of the limitations period and the

18  defendant would not be prejudiced by the late filing."[52]  "Under equitable tolling,

19  plaintiffs may sue after the statutory time period for filing a complaint has expired if they

20  have been prevented from filing in a timely manner due to sufficiently inequitable

21

22       [47]Doc. 37 at 13.

23       [48]A.R.S. § 12-821.01(A).

24       [49]A.R.S. § 12-821.

25       [50]There are 305 days between July 4, 2013 and May 5, 2014.  There is about one year
26  and four months between July 4, 2013 and November 5, 2014.

27       [51]Doc. 37 at 14-15.

28       [52]*Kyles v. Contractors/Engineers Supply, Inc.*, 949 P.2d 63, 65 (Ariz. Ct. App. 1997).

1   circumstances."[53]  In order for the equitable tolling doctrine to apply, the plaintiff must
2   establish that she was prevented from timely filing because of "extraordinary
3   circumstances."[54]

4        The Lees do not cite any cases holding that a plaintiff's failure to retain counsel
5   within the limitations period was a sufficient "extraordinary circumstance" to justify
6   application of the equitable tolling doctrine.  The court need not consider this question,
7   however, because it is undisputed that when the Lees retained counsel they had about
8   six months to file suit against Kingman.  The Lees offer no explanation for why they
9   failed to file suit between January 2014, when they retained counsel, and July 2014,
10  when the one-year statue of limitations expired.  Because the Lees and their counsel
11  had ample time to bring suit within the limitations period, the equitable tolling doctrine is
12  of no avail to them, and their suit against Kingman is barred by A.R.S. § 12-821.

### V.  CONCLUSION

13       For the reasons set forth above, the motion at docket 34 is **GRANTED**.
14  Defendant City of Kingman is **DISMISSED** as a defendant in this action.
15       DATED this 25th day of August, 2015.

18                                    /s/  JOHN W. SEDWICK
                                 SENIOR UNITED STATES DISTRICT JUDGE

[53]*McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 696 (Ariz. Ct. App. 2007) (internal quotation omitted).

[54]*Id.*

-12-